**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FANNIE MAE**, <br><br> *Plaintiff,* <br><br> v. <br><br> **MM CLOISTERS I LLC**, <br><br> *Defendant.* | **Case No. 2:25-cv-06122-JDW** |

## MEMORANDUM

When a borrower stops paying a loan that a mortgage secures, the lender can foreclose on the property to recoup its losses. But foreclosure can take time, and in many situations, the writing is on the wall. When that's the case, the borrower doesn't have much incentive to keep up its end of the bargain while awaiting the outcome of the foreclosure proceedings. That's why many commercial mortgages include provisions that provide for interim relief like the appointment of a receiver to operate a property while the case proceeds. That interim relief is at issue in this Motion. Fannie Mae holds a mortgage on a property that MM Cloisters LLC owns and operates. The mortgage authorizes Fannie Mae to seek the appointment of a receiver in the event of a default. And there's no question that MM Cloisters has defaulted; it stopped making payments to Fannie Mae at least nine months ago. After my review of the relevant factors, I will grant Fannie Mae's request and appoint a receiver.

## I.    RELEVANT BACKGROUND

On June 21, 2019, Berkadia Commercial Mortgage LLC loaned $5,427,000 to MM Cloisters I LLC to purchase property at 3809 Spring Garden Street, Philadelphia, Pennsylvania 19104 (the "Property"). The Property is a 50-unit residential apartment building that generates rental income. The terms of the loan are set forth in a Multifamily Loan And Security Agreement (Non-Recourse) (the "Loan Agreement"), and there is an accompanying Multifamily Note (the "Note"). In turn, an Open-End Multifamily Mortgage, Assignment Of Leases And Rents, Security Agreement And Fixture Filing (the "Mortgage") secures the Note. On July 5, 2019, Berkadia assigned the Loan Agreement, Note, Mortgage, and other related instruments to Fannie Mae.

Pursuant to the Loan Agreement, MM Cloisters must make monthly debt service payments to Fannie Mae in the amount of $25,971.94. MM Cloisters made its last monthly payment in May 2025. It contends that Fannie Mae created unfavorable economic conditions when it imposed forced-place insurance on the Property. According to MM Cloisters, the imposition of additional insurance premiums "caused the monthly debt service obligations to skyrocket beyond historically required levels and beyond what the Property's cash flow could reasonably support[,]" thereby "creat[ing] payment stress." (ECF No. 18-1 at ¶¶ 25, 28.) (The monthly premium was $1,256.84.)

After MM Cloisters failed to make any payments in June, July, August, and September 2025, Fannie Mae sent MM Cloisters a Notice of Default. The Loan Agreement

identifies various Events of Default, including "any failure by Borrower to pay or deposit when due any amount required by the Note, this Loan Agreement or any other Loan Document[.]" (ECF No. 10-1 at Section 14.01(a)(1).) In turn, the Mortgage sets forth various remedies when there is an Event of Default, including seeking the appointment of a receiver:

> [I]f an Event of Default has occurred and is continuing, and regardless of the adequacy of the Lender's security or Borrower's solvency, ... Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by applicable law.

(ECF No. 10-3 at Section 3(e).) Pursuant to the Mortgage, a receiver could collect all rents and take any other actions permitted under applicable lease agreements; a receiver could also "enter upon, take and maintain full control" of the Property. (*See id.* at Section 3(c), (d).) In addition, if there is an Event of Default, Fannie Mae is "entitled to all Rents as they become due and payable[.]" (*Id.* at Section 3(c).) MM Cloisters has not turned over any rent proceeds to Fannie Mae since it stopped making monthly debt payments.

On October 28, 2025, Fannie Mae initiated a mortgage foreclosure proceeding against MM Cloisters and moved the Court for the expedited appointment of a receiver to take control of the Property. On November 26, 2025, Fannie Mae stipulated that MM Cloisters could respond to the Complaint and the receiver motion on January 12, 2026.

MM Cloisters opposed the motion, and the Parties then had to resolve some issues related to diversity jurisdiction that I raised *sua sponte*. Fannie Mae's motion is now ripe.

## II.    LEGAL STANDARD

In diversity cases like this one, federal law governs the appointment of a receiver. *See Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009). However, under both federal and state law, "the appointment of a receiver is an extraordinary, a drastic and … an 'heroic' remedy. It is not to be resorted to if milder measures will give the plaintiff … adequate protection for [its] rights." *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942). When district courts within the Third Circuit consider whether to exercise their discretion to appoint a receiver in the context of a mortgage foreclosure, they consider the following: "[whether] the property is inadequate security for the loan; [whether] the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; the unstable financial status of the mortgagor; [and] the misuse of project funds by the mortgagor." *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. 2012) (quotation omitted).

Where "the moving party seeks a receiver who will not only collect rents and profits, but will also manage and operate the mortgaged property pending foreclosure, federal courts are particularly cautious in appointing a receiver, and therefore consider whether the evidence demonstrates 'something more' than just 'the doubtful financial standing'

of the defendant and the 'inadequacy of the security.'" *Wells Fargo*, 905 F. Supp. 2d at 614

(quotation omitted). In those cases, courts consider additional factors including: the

danger of waste; delays in foreclosure; any fraudulent conduct by the defendant;

"imminent danger that property [will] be lost, concealed, injured, diminished in value, or

squandered; the inadequacy of the available legal remedies; the probability that harm to

plaintiff by denial of the appointment would be greater than the injury to the parties

opposing appointment; and the plaintiff's probable success in the action and the

possibility of irreparable injury to his interests in the property." *Id.* at 614-15 (same); *see*

*also Lieberman v. Corporacion Experienca Unica, S.A.*, 226 F. Supp. 3d 451, 473 (E.D. Pa.

2016). "[N]o one factor is dispositive." *Canada*, 563 F.3d at 845. The party seeking the

appointment of a receiver bears a "heavy burden" to demonstrate that such drastic relief

is warranted. *U.S. Bank Nat'l Ass'n v. B-R Penn Realty Owner, LP.*, No. 21-cv-502, 2021 WL

1721863, at *2 (E.D. Pa. Apr. 29, 2021).

## III.    ANALYSIS

On balance, the factors for me to consider favor the appointment of a receiver.

*First*, the Mortgage authorizes Fannie Mae to seek the appointment of a receiver in the

Event of Default. An Event of Default is "any failure by Borrower to pay or deposit when

due *any* amount required by the Note, this Loan Agreement or any other Loan

Document[.]" (ECF No. 10-3 at Section 1; ECF No. 10-1 at Section 14.01(a)(1) (emphasis

added).) This isn't a dispute about a small discrepancy in payment. MM Cloisters hasn't

made **any** of the required monthly payments to Fannie Mae since May 2025. Notably, MM Cloisters does not dispute that fact. "In an action regarding a note secured by a mortgage, the lender 'presents a *prima facie* case by showing 'the execution and delivery of the [note] and its nonpayment.'" *Wells Fargo Bank, N.A. v. Chun Chin Yung*, 317 F. Supp. 3d 879, 885 (E.D. Pa. 2018) (quotation omitted). Thus, Fannie Mae's contractual right to ask for a receiver and MM Cloisters's months-long default weigh strongly in support of Fannie Mae's request.

The fact that MM Cloisters disputes whether Fannie Mae was entitled to impose forced-place insurance does not change my analysis or mean that there is an open question as to whether there has been an Event of Default. Even if—as MM Cloisters contends—Fannie Mae "manufactured" the default by imposing "excessive and unnecessary forced-placed insurance" (ECF No. 18 at 10; ECF No. 18-1 at ¶ 25), that does not explain why MM Cloisters failed to make the monthly loan payments it had been making before Fannie Mae imposed the additional insurance. Regardless of whether MM Cloisters had to pay for forced-place insurance does not change the fact that it failed to pay amounts due under the Loan Agreement—*i.e.*, the monthly loan payments—constituting an Event of Default. While MM Cloisters argues that Fannie Mae should not be able to "create a default ... and then invoke it as the basis for receivership[,]" it does not point to any controlling law or contractual provision that excuses its non-payment of the monthly loan amounts while it disputed the forced-insurance issue.

*Second*, MM Cloisters' continuing default makes it likely that Fannie Mae will prevail in this mortgage foreclosure action. So too does MM Cloisters' own statement that the Property's monthly cash flow is insufficient to pay the current debt service requirements. This factor also strongly favors Fannie Mae's request.

*Third*, MM Cloisters's statements suggest that it is financially unstable. It has conceded that the Property's cash flow does not support the monthly debt service. On its own, that concession is troubling. So too is its contention that the forced place insurance created its financial distress. The monthly premium on the insurance, a little over $1,200, is relatively modest. The fact that that added expense created such financial stress suggests the company's financial standing is tenuous.

In addition, MM Cloisters has been trying to refinance the loan to no avail. At first, MM Cloisters projected that it would close the refinancing by the end of 2025. (*See* ECF No. 24-1 at ¶ 11.) That didn't happen. Then, in more recent filings, one of MM Cloisters's principals stated that the refinancing was "imminent" and that he expected that it would close by the end of January 2026. (ECF No. 18-1 at ¶ 39.) That didn't happen either. It is now mid-March, and neither Party has updated me that MM Cloisters has completed the refinancing. Also, in prior years, MM Cloisters provided Fannie Mae with quarterly Property operating statements and rent rolls to Fannie Mae. However, MM Cloisters has not provided Fannie Mae with these financial reports since December 2024, despite

requests from Fannie Mae. All of this suggests that MM Cloisters is facing financial instability. MM Cloisters's apparent financial distress also weighs in favor of a receiver.

Other factors are neutral or weigh against Fannie Mae's request. MM Cloisters argues that the property is worth $7 million, so it is more than adequate to secure Fannie Mae's interest. But that's just an assertion. MM Cloisters does not offer any evidence to support that argument.[1] Fannie Mae, on the other hand, does not argue that it is under-secured or offer any evidence about the value of the property. I therefore treat this factor as neutral.

Fannie Mae also has not argued or offered evidence to suggest that anything will delay foreclosure on the property, that MM Cloisters has misused project funds, or that the Property will be lost or damaged without the appointment of a receiver. Thus, these factors weigh against the appointment of a receiver.

Finally, the traditional factors for equitable relief tilt in favor of appointment of a receiver. As a threshold matter, "[t]hese factors may be applied in a less stringent manner if a loan agreement expressly allows for the lender to apply for a receiver in the event of a default." *Wells Fargo Bank, Nat'l Ass'n as Tr. for Registered Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-through Certificates, Series 2017-K724 v. MM-FCDC Partners, L.P.*, No. 24-cv-2051, 2025 WL 2087784, at *4 (E.D. Pa. July 24, 2025)

---

[1]    I note that, according to publicly available records, the City of Philadelphia's assessed value on the property is $4,934,500—not $7 million.

(quotation omitted). In any event, given MM Cloisters's apparently dire financial straits, Fannie Mae has reason to think that remedies at law might prove inadequate to protect its interests. The balance of harms also favors Fannie Mae because it is not clear that MM Cloisters will suffer any harm from the appointment of a receiver other than payment of a receiver's monthly fees.

On balance, these various factors favor the appointment of the receiver that Fannie Mae seeks. The factors that favor Fannie Mae do so strongly. The record before me suggests that MM Cloisters is on a financial precipice, and the Mortgage does not require Fannie Mae to wait to find out if MM Cloisters falls over the edge. While there's no evidence of wrongdoing on MM Cloisters's part, that alone isn't enough to outweigh the risks that Fannie Mae currently faces from MM Cloisters's continued default.

## IV.    CONCLUSION

MM Cloisters has now gone nine months without paying anything towards its debt service, and the record strongly suggests that MM Cloisters will continue to default, given its negative cash flow. Fannie Mae does not have to wait around to see if MM Cloisters's financial posture changes or if it can close a refinancing. I will grant Fannie Mae's Motion. Because Fannie Mae has submitted a detailed proposed Order that is not the subject of the briefing, I will give MM Cloisters one week to voice any objections that it has to particular provisions of Fannie Mae's proposed Order.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 11, 2026